UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY L. THOMPSON,<br><br>        Plaintiff,<br>vs.<br><br>JOSH KLIMEK, Unit Manager; DIANE ROMKEMA, Case Manager; JERRAME LARSEN, D-H-O Hearing Officer; and LEE KAUFENBERG, Correctional Officer,<br><br>        Defendants. | 4:16-CV-04071-KES<br><br><br>ORDER ADOPTING THE REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S VARIOUS OTHER MOTIONS |

Plaintiff, Terry L. Thompson, filed this lawsuit under 42 U.S.C. § 1983. The case was referred to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on several motions, including defendants' motion for summary judgment (Docket 52), Thompson's motion for relief from order (Docket 68), Thompson's motion supporting factual positions (Docket 77), and Thompson's motions for preliminary injunction (Docket 79, 81, 85).

On August 18, 2017, the magistrate judge submitted her report and recommended that defendants' motion for summary judgment be granted and Thompson's pending motions be denied as moot. Docket 95. Thompson filed his objection (Docket 97) to the report and recommendation (Docket 95) on September 25, 2017. Thompson also filed a motion requesting updated documents. (Docket 98). For the reasons below, Magistrate Judge Duffy's

report and recommendation is adopted as supplemented by this order and Thompson's remaining motions are denied as moot.

## FACTUAL BACKGROUND

Thompson is currently an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota. A factual background was compiled by Magistrate Judge Duffy in her report and recommendation. Docket 95. The court will utilize those facts as relevant in the discussion section below.

In addition to the facts in the report and recommendation, Thompson alleges that during the months of December 2015 and January 2016, D-H-O Officer Jerrame Larsen was "doing coordinated drops" of synthetic marijuana in the Mike Durfee State Prison. Docket 97. Thompson alleges that he went to case manager Diane Romkema to tell her about the drugs going around the prison and offer his assistance. *Id.* Thompson alleges that he offered to ask individuals using marijuana where they were getting drugs. *Id.* Thompson alleges that he, along with other Native American inmates, asked individuals who they got their drugs from and D-H-O Jerrame Larsen's name came up as the person doing "coordinated drops." *Id.* As a result, Thompson alleges that he got in trouble and was placed in the SHU in retaliation. *Id.* Defendant Jerrame Larsen presided over the disciplinary hearing that gave Thompson sixty days in the SHU. Docket 55 at pp. 4-5.

Thompson also objects to the facts in the report and recommendation because it excluded the reason for several of his actions. First, Thompson

claims he approached Registered Nurse Rachel Pravecek, because he claims he was in fear for his life due to his heart condition. Thompson claims that he only smiled and tried to be nice to R.N. Pravecek. Second, Thompson claims he asked for Correctional Officer Beach because she treats everyone as equal and has respect for inmates. Furthermore, Thompson claims that during this time he was still under the influence of anesthesia and morphine following his pacemaker surgery.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case

on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these

special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

## DISCUSSION

### I. Thompson's Objections

Thompson raises thirty-seven objections to Magistrate Judge Duffy's Report and Recommendation. Docket 97. Many of Thompson's objections raise similar facts and legal claims. Thompson's relevant objections will be addressed when the court analyzes the applicable legal claims.

Thompson raises new claims in his objections. *See* Docket 97 at pp. 21-23, 27. This court denied Thompson's three motions to amend (Dockets 20, 21, and 22) after defendants filed their answer (Docket 14) and after Thompson had previously amended his complaint (Docket 3). Docket 37. This court did not grant Thompson leave to amend his complaint. If Thompson wishes to litigate these claims, he needs to file a new complaint.

### II. Qualified Immunity

Defendants contend that they are entitled to summary judgment on grounds of qualified immunity. Docket 53 at p. 3. Section 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" causes the deprivation of a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983.

5

The doctrine of qualified immunity, however, generally shields " '[g]overnment officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The court may analyze these two factors in either order. *Hutson v. Walker*, 688 F.3d 477, 483 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). But "[t]o deny the officers qualified immunity, [the court] must resolve both questions in [the plaintiff's] favor." *Hawkins v. Gage Cty.*, 759 F.3d 951, 956 (8th Cir. 2014).

Thompson contends defendants are not entitled to qualified immunity. Docket 97. First, Thompson states that defendants cannot use qualified immunity to shield themselves from discovery. *Id.* at p. 2. Thompson wishes to discover video camera footage and to summons witnesses to verify facts. *Id.* The United States Supreme Court stated that qualified immunity is "immunity from

suit rather than a mere defense to liability" and should be raised early in the suit to avoid "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery" in cases where a constitutional violation was not clearly established at the time. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Harlow*, 475 U.S. at 818. Only if plaintiff's claims survive a dispositive motion on the issue of qualified immunity will the plaintiff "be entitled to some discovery." *Crawford-EL v. Britton*, 523 U.S. 574, 598 (1998). Consistent with the Supreme Court's opinion, on December 21, 2016, this court granted defendants' motion for protective order (Docket 30) that stayed discovery with an exception. Docket 37. This court ordered defendants to provide Thompson with a copy of the grievances Thompson filed against defendants and defendants' disciplinary reports that concerned Thompson. *Id.* Thus, Thompson is not entitled to discover video camera footage and to summons witnesses at this time.

Second, Thompson claims qualified immunity does not shield defendants who are sued in their official capacity. Docket 97 at p. 19. Thompson is correct, the qualified immunity defense applies only to the individual capacity claims against defendants for money damages; it does not affect Thompson's official capacity claims for declaratory and injunctive relief. *Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994). But defendants cannot be sued for damages in their official capacity. "[T]he Eleventh Amendment prohibits

7

federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.' " *Treleven v. Univ. of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996) (quoting *Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 464 (1945)).

### III. Retaliation

Thompson asserts that he suffered retaliation under two separate theories. First, Thompson claims that he suffered retaliation for trying to access medical care and exercising his First Amendment right to do so. This claim involves an incident with R.N. Pravecek and C.O. Beach. Second, Thompson also asserts an additional claim that he suffered retaliation after exercising his First Amendment rights to investigate drugs inside of the prison. This claim is against his case manager Diane Romkema and D-H-O Hearing Officer Jerrame Larsen.

To establish a retaliation claim, Thompson must show " '(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.' " *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)). "The plaintiff-inmate has a heavy evidentiary burden," *Meuir v. Greene Cty. Jail Emps.,* 487 F.3d 1115, 1119 (8th Cir. 2007) (citing *Murphy v. Mo. Dep't*

*of Corr.,* 769 F.2d 502, 503 n.1 (8th Cir. 1985)), and "[m]erely alleging that an act was retaliatory is insufficient." *Id.* (citing *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985)).

**A. Thompson has not demonstrated that he was retaliated against for trying to access medical care from R.N. Pravecek and C.O. Beach and for exercising his First Amendment right, because Thompson's conduct violated prison rules.**

Thompson claims that he exercised his First Amendment right and his right to access medical care when he approached R.N. Pravecek and asked for C.O. Beach. He claims he was punished for seeking medical aid from prison staff and trying to be nice.

Liberally construing Thompson's First Amendment claim, Thompson has a constitutional right to petition prison staff for redress of his grievances. *See Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007) (filing grievances is a protected First Amendment activity). Thompson also has a right to access medical care. The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to provide inmates with medical care. *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997).

But the manner of Thompson's conduct violated prison rules. Despite Thompson's stated intent, his conduct served as the basis for the M-5 write-up he received. Docket 91, att. 3, p. 1. The write-up charges Thompson with violating the following rule: "Making any unsolicited contact with or in

9

reference to any non-inmate (writing notes or letters, making suggestive remarks or gestures, inappropriate touching, or seeking out personal information)." *Id.* The write-up "incident details," written by Lee Kaufenberg, states,

> On 1-25-16 Thompson was in Medical being monitored because of a complaint of anxiety. Thompson was being monitored by a nurse when another RN, Rachel Pravecek, entered the room. Thompson smiled at RN Provecek and asked her to sit down and talk awhile. Later that morning Thompson was back in East Crawford and was asking officers at the desk if CO Beach was working. Staff told Thompson it was none of his concern if she was working. Thompson then stated that CO Beach makes him smile. I spoke with CO Beach and she said Thompson always hangs around the desk when she works in East Crawford and also follows her when she does rounds.

*Id.* Following the M-5 write-up, Thompson received a disciplinary hearing where he admitted his conduct but claimed he was still coming off drugs from his pacemaker surgery. *See* Docket 55 at p. 2. And Thompson's own objections to the report and recommendation concede the facts alleged in the M-5 write-up. *See* Docket 97. The hearing officer Jerrame Larsen found the charge substantiated and sent Thompson to the SHU for sixty days. *See* Docket No. 53-29.

"[If] the alleged retaliatory conduct violations were issued for the actual violation of a prison rule," a plaintiff's retaliation claim fails. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) ("To establish the third element of the prima facie case for retaliatory discipline, that exercising the protected right

10

motivated the discipline, an inmate must show that but for a retaliatory motive the prison official would not have filed the disciplinary report."). "Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Hartsfield*, 511 F.3d at 829 (quoting *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993)). Because there is evidence that Thompson violated a rule, he has failed to demonstrate that defendants possessed a retaliatory motive.

Thompson claims he had the right to confront and cross examine R.N. Pravecek and C.O. Beach at his disciplinary hearing. But Thompson does not have a constitutional right to "confrontation and cross-examination of those furnishing evidence against the inmate . . . ." *Wolff v. McDonnell*, 418 U.S. 539, 567-69 (1974); *accord*, *Baxter v. Palmigiano*, 425 U.S. 308, 320-23 (1976).

Thompson relies on *Haynes*. There, an inmate prevailed on a retaliatory discipline claim. *Haynes*, 588 F.3d at 1154. An inmate filed a grievance against a correctional officer for allegedly cursing and swearing at him. *Id.* at 1155. After learning of the grievance, the correctional officer filed a disciplinary report against the inmate for filing a false grievance allegation despite prison policy prohibiting correctional officers from filing disciplinary reports against inmates filing false grievances. *Id.* The prison transferred the inmate to an isolation cell. *Id.* The court found that the third element of a prima facie case of retaliatory discipline was clearly satisfied in *Haynes*, because the discipline was a direct result of the filing of a grievance. *Id.* at 1156. But here, unlike in *Haynes*,

11

Thompson received punishment for an actual rule violation. And the prison officials did not violate a rule when they wrote up Thompson. Thus, *Haynes* is distinguishable from the facts here. *Id.*

Thompson also relies on *Willey v. Kirkpatrick*, 664 F. Supp. 2d 218 (W.D.N.Y. 2009) and *Vega v. Artus*, 610 F. Supp. 2d 185 (S.D.N.Y. 2009). *Willey* is factually distinguishable in several important ways. The inmate alleged the disciplinary report against him was false and the inmate did not receive due process at the disciplinary hearing. *Willey*, 664 F. Supp. 2d at 223-24. Neither exists here. *Vega* is also factually distinguishable, but more significantly, it appears that Thompson does not meet the retaliation standard set out in *Vega*. *Vega v. Artus*, 610 F. Supp. 2d 185 (S.D.N.Y. 2009). The *Vega* court states, "To meet the second prong of the retaliation test, Plaintiff must allege that Defendants took adverse action against him because he filed grievances." *Id.* at 206. Thompson makes no such allegation.

Thompson has not proven that there is a genuine issue of material fact regarding his Eighth Amendment retaliation claim for exercising his First Amendment right. For that reason, the court grants defendants' motion for summary judgment on this claim.

**B. Thompson has not demonstrated that defendants retaliated against him for investigating Officer Jerrame Larsen and reporting it to case manager Diane Romkema.**

Thompson alleges that he was placed in the SHU as retaliation for engaging in an investigation into Officer Jerrame Larsen and reporting it to case manager Diane Romkema. Thompson claims he discovered that D-H-O Jerrame Larsen was bringing synthetic marijuana into the prison through "coordinated drops." Docket 97 at 1-6. Thompson's objections allege that this occurred between the 1st and 18th of January 2017.

Thompson claims that he engaged in protected activity by asking other prisoners from whom they got their drugs and reporting his findings to his case manager. Thompson claims that this was an exercise of his First Amendment right.

Thompson has a constitutional right to petition prison staff for redress of his grievances. *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (filing grievances is a protected First Amendment activity). Thompson also has a right to respond truthfully to questioning in connection with an investigation undertaken by the prison. *See Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995) ("We believe it to be self evident that ordinary citizens enjoy a constitutional privilege to freely participate in governmental investigations. . . . [I]t is a right retained by prison inmates."). Thompson, however, was not simply cooperating with an internal prison investigation. Thompson claimed he conducted his own investigation. In *Cornell,* the court reasoned that, "[i]t is well established . . . that 'a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate

13

penological objectives of the corrections system.' " *Id.* at 1388. An inmate conducting his own investigation into prison staff, however, is inconsistent with "legitimate penological objectives of the corrections system." *Id.* Therefore, Thompson failed to demonstrate that he exercised a constitutionally protected right necessary to show a prima facie case of retaliation.

Thompson failed to identify facts that show the alleged retaliation was sufficiently severe to rise to the level of a constitutional violation. Thompson has not alleged that defendants' actions "chilled" his investigation. *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876); *see also* Docket 97 at p. 16.

The third element of a prima facie case requires the plaintiff to show that "but for" the retaliatory motive the disciplinary action would not have been taken. *Haynes*, 588 F.3d at 1156. The "but for" test applies to the defendants' motive, not causation. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012). The "causal connection is generally a jury question, . . . [but] it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Beaulieu*, 690 F.3d at 1025. Where disciplinary action takes place "almost immediately" after a defendant learns of the protected constitutional activity, there is a sufficient nexus in time to show causation. *Haynes*, 588 F.3d at 1156-57. A span of three days between the alleged retaliation and the conclusion of the plaintiff's exercise of his constitutional rights was a sufficiently close nexus in time to stave off summary judgment. *Santiago*, 707 F.3d at 993. Where the allegedly retaliatory

action takes place before a defendant knows that the plaintiff exercised a constitutional right, summary judgment in favor of the defendant is appropriate. *Beaulieu*, 690 F.3d at 1025-26.

Here, Thompson fails to show he received any discipline as a result of his investigation and the filing of a grievance. Furthermore, Thompson fails to demonstrate any retaliatory motive defendants may have possessed in so retaliating. Thompson never alleged that Jerrame Larsen knew of Thompson's allegations or grievance. Thompson's bare allegations are "insufficient." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citing *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)).

Thompson has not proven that there is a genuine issue of material fact regarding his Eighth Amendment retaliation claim. For that reason, the court grants defendants' motion for summary judgment on this claim.

### IV. Deliberate Indifference

Thompson claims that defendants' deliberate indifference to his serious medical needs violated his constitutional right under the Eighth Amendment. "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

15

intentionally interfering with the treatment once prescribed." *Id.* at 104-05. "This . . . does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence are not enough to state a claim. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (stating prisoner must show more than gross negligence and more than disagreement with treatment decisions).

Deliberate indifference requires the court to make both an objective and a subjective evaluation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Thompson is required to show (1) that he suffered objectively serious medical needs and (2) that defendants actually knew of but deliberately disregarded those needs. *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman*, 114 F.3d at 784. To establish liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). When a prisoner alleges that a delay in treatment violates the Eighth Amendment deliberate indifference

16

standard, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (citation omitted).

Thompson established the existence of a serious medical need involving his heart and anxiety condition. Defendants do not dispute that Thompson's heart and anxiety conditions are serious medical needs.

Thompson fails to show, however, that defendants were ever indifferent to Thompson's medical needs. *See* Docket 80. Thompson's exhibits demonstrate persistent access to medical care before and after Thompson was placed in the SHU. Those records show that Thompson accessed medical care on October 21, 2015 (twice); October 30, 2015; November 7, 16, 17, 18, 19, 23, and 30, 2015; December 3, 4, 7, and 10, 2015; and January 14, 15, 16, and 17, 2016. *See* Docket 80 at pp. 1-31.

Thompson objects to being placed in the SHU following his pacemaker surgery. Thompson claims that he suffered heart pain, experienced anxiety, and struggled to breathe while in the SHU. Docket 97. Even though Thompson was housed in the SHU from January 22 to March 22, 2016, the record from this period of time shows Thompson continued receiving consistent medical attention. Docket 80. The record shows that Thompson accessed medical attention on January 24 (twice), 26 (three times), 29 (twice), 31 (twice); February 5; February 8 (twice). *Id.* at pp. 39-57. Thompson claims that video footage will show that he required help to stand up and use the bathroom.

17

Docket 97 at p. 10. But this only further demonstrates defendants attending to his medical needs while housed in the SHU. The severity of Thompson's symptoms does not negate the fact that defendants attended to his medical needs.

Thompson claims that video footage will show him in distress "while at the nurses station" on various occasions. Docket 97 at p. 2. And Thompson claims defendants were deliberately indifferent when they struggled to place EKG wires on Thompson when he was shackled. *Id.* at p. 14. But Thompson's presence at the nurses station and his receipt of care demonstrates defendants' attention to his medical needs.

Thompson has not proven that there is a genuine issue of material fact regarding his deliberate indifference claim and has failed to show a constitutional violation. This defeats Thompson's claim for damages. Defendants are entitled to summary judgment on this claim.

Thompson also seeks declaratory and injunctive relief. Claims for declaratory and injunctive relief are rendered moot when a prisoner is released or transferred to another facility. *See Smith v. Hundley,* 190 F.3d 852, 855 (8th Cir. 1999) (discussing *Hickman v. Missouri,* 144 F.3d 1141, 1142 (8th Cir. 1998); and *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985)). This is true even if the prisoner argues he might, at some future time, be incarcerated at the same prison. *Smith,* 190 F.3d at 855. Thompson was transferred from the Mike Durfee State Prison in Springfield, South Dakota to the South Dakota

State Penitentiary in Sioux Falls, South Dakota. Therefore, his claims for declaratory and injunctive relief are moot.

**CONCLUSION**

Thompson complains that he was retaliated against when he exercised his constitutional rights to access medical care and to exercise free speech. Thompson further complains that defendants were deliberately indifferent to his serious medical conditions. But, Thompson failed to show a constitutional violation and that defeats all of his claims for damages. Finally, Thompson's claims for declaratory and injunctive relief are moot because he is no longer imprisoned at the Mike Durfee State Prison in Springfield, South Dakota.

Thus, it is ORDERED

1. The report and recommendation of the magistrate judge (Docket 95) is adopted in full as supplemented.

2. Defendants' motion for Summary Judgment (Docket 52) is granted.

3. Thompson's motion for Relief from Order (Docket 68) is denied as moot.

4. Thompson's motion Supporting Factual Positions (Docket 77) is denied.

5. Thompson's motion for Preliminary Injunction (Docket 79) is denied as moot.

6. Thompson's motion for Preliminary Injunction (Docket 81) is denied as moot.

7. Thompson's motion for Preliminary Injunction (Docket 85) is denied as moot.

8. Thompson's objections (Docket 97) to the report and recommendation are overruled.

9. Thompson's motion for update (Docket 98) is denied as moot.

Dated September 28, 2017.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE